## THE RAVENSDALE.

### THEBAUD et al. v. THE RAVENSDALE.

(District Court, S. D. Alabama. July 30, 1896.)

No. 745.

SHIPPING—DELIVERY OF CARGO—LIBEL FOR FREIGHT.

A master, having a cargo under a bill of lading for delivery to order, was ignorant as to who were the indorsees, and was therefore unable to notify them of his arrival. The day after arrival he libeled the cargo for freight, but on the third day he received a letter from the attorneys of the indorsees of the bill of lading, who, after naming the principals, said, "We have for them to offer to pay the freight, * * * and to demand delivery, as per bill of lading, on paying freight." The freight was not, however, paid or tendered, and five days later the master discharged the cargo upon the wharf, and caused another writ of seizure to be executed upon it. *Held* that, as the letter showed that the consignees had knowledge of the arrival, no further notice was necessary; that while the first seizure was premature, because made while the cargo was still on board, yet the proceedings taken by the master did not amount to a conversion, for which the consignees could claim even nominal damages against the ship.

This was a libel in rem by Thebaud Bros. against the steamship Ravensdale to recover damages for alleged conversion of cargo by the master. For cases in which the master libeled the cargo to enforce a lien for charter hire, see 75 Fed. 408, 410.

Pillans, Torrey & Hanaw, for libelants.
Clark & Clark and Converse & Kirlin, for claimants.

TOULMIN, District Judge. "The owner of a vessel has a lien on the cargo for the freight, and may retain the goods after the arrival of the ship at the port of destination until the payment is made. He cannot, however, detain the goods on board the ship until the freight is paid, as the consignee or owner of the cargo would have no opportunity to examine their condition." The Eddy, 5 Wall. 493. "The shipowner may deliver the goods on the wharf; but, to constitute a valid delivery there, the master should give due and reasonable notice to the consignee, so as to afford him a fair and reasonable opportunity to remove the goods, or put them under proper care and custody. If the goods are not accepted and the freight paid by the consignee, the carrier should not leave them exposed on the wharf, but should store them in a place of safety, notifying the consignee or owner that they are so stored, subject to the lien of the ship for the freight and charges." The Eddy, supra. But want of notice is excused when a consignee is unknown, or is absent, or cannot be found after diligent search. If the consignee or the indorsee of the bill of lading for delivery to order cannot be found, the duty of the carrier is to retain the goods until they are claimed, or to store them. The Thames, 14 Wall. 98.

The bill of lading in this case was for delivery to order. The consignees or indorsees of the bill of lading were unknown to the master, at least up to December 12, 1895. On that day, the attorneys representing said indorsee, Messrs. Thebaud Bros., addressed a letter to the master, advising him that Messrs. Thebaud Bros., of New York, were the holders of the bill of lading issued by his ship for 1,002 bales of Sisal hemp, and in the letter say: "Representing Messrs. Thebaud Brothers, * * * we have for them to offer to pay the freight on same, stipulated in the bill of lading, and to demand delivery, as per bill of lading, on paying freight." There is no proof of any payment or tender of freight, or of any offer to pay freight, or of any demand for delivery of the goods, other than is contained in the said letter. The letter seems to be more of a notice to the master as to who were the holders of the bill of lading, and who were nonresidents, and that the writers, representing said holders, have to offer to pay freight for them, and to demand delivery of goods on paying freight. As I have said, the proof shows no freight was paid or tendered; no presentation of the bill of lading and no demand for delivery made, other than as above stated. Up to the receipt of this letter, it appears from the proof that the holders of the bill of lading were unknown to the master, which excused want of notice by the master. The letter indicated that said holders were absent from this port, but it also indicated that they had notice of the arrival of the ship with their cargo. Hence no further notice to them, it seems to me, was necessary. On December 9, 1895, the vessel arrived in Mobile. On December 10, 1895, the master sued out a writ of seizure on a libel filed claiming a lien on the cargo for charter hire, etc., and the writ was executed by a seizure of the cargo on board the ship. The ground alleged for this proceeding was the insolvency of the charterer of the vessel, and apprehended loss of the charter hire provided for in the contract. I think this proceeding was premature.

The cargo remained on board of the ship until December 17, 1895, when it was discharged on the wharf, and another writ of seizure was executed on it. The holders of the bill of lading, having at least five days' notice of the arrival of the ship with their goods, failed to come forward when the cargo was discharged, and demand delivery to them on payment or tender of freight, as they had given notice they would do. Without such payment or tender and demand, I think they have no just ground for complaint; and I do not consider that the proceedings taken by the ship master were, under the circumstances of the case, a conversion, for which Thebaud Bros. can recover even nominal damages. Their libel must therefore be dismissed.